*414 OPINION OF THE COURT
Simons, J.
Plaintiffs are recipients of public assistance in the form of Aid to Families with Dependent Children (ADC) residing in New York City whose shelter costs exceed the maximum allowance payable to them under the Department of Social Services schedules (see, 18 NYCRR 352.3). Defendants are the State and New York City Commissioners of Social Services, defendants Perales and Grinker, and plaintiffs’ landlords.[1] Plaintiffs allege that present levels of shelter allowances are inadequate to pay their rent, that as a result they are threatened with eviction and are unable to find alternative housing and are thereby prevented from raising their children in their homes. They allege that defendant Commissioners have a statutory and constitutional duty to provide "adequate” shelter allowances, that they have failed to fulfill that duty and have established allowances that are arbitrary and capricious because they no longer bear a reasonable relation to the cost of housing in New York City.
After the complaint was served, defendants moved to dismiss for failure to state a cause of action. Supreme Court denied the motion and granted plaintiffs various items of intermediate relief. On cross appeals, the Appellate Division reversed the order of Supreme Court and dismissed the complaint. It held that the provisions of Social Services Law § 350 (1) (a), which require the State Commissioner to establish "adequate” shelter allowances for ADC recipients, are directory or precatory, not mandatory, and that the amount of such allowances is a matter which rests within the State Commissioner’s unreviewable discretion.[2] We granted leave to appeal.
In reviewing defendants’ motion to dismiss for insufficiency, we are obliged to assume the truth of the facts asserted in the complaint and the affidavits opposing dismissal and accord plaintiffs the benefit of all favorable inferences that may be *415 drawn from their pleadings (Prudential-Bache Sec. v Citibank, 73 NY2d 263, 275 [citing cases]). Having done so, we conclude that section 350 (1) (a) imposes a statutory duty on the State Commissioner of Social Services to establish shelter allowances that bear a reasonable relation to the cost of housing in New York City and that plaintiffs’ claim that he has failed to perform that duty presents a justiciable controversy involving the alleged failure of the executive branch of government to comply with the directions of the legislative branch. Accordingly, we reverse the order of the Appellate Division and remit the matter for further proceedings.
I
CPLR 3001 authorizes declaratory relief between parties submitting a justiciable controversy to the court. Justiciability is an "untidy” concept but it embraces the constitutional doctrine of separation of powers and refers, in the broad sense, to matters resolvable by the judicial branch of government as opposed to the executive or legislative branches or their extensions (see generally, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3001:4, at 357). Broad policy choices, which involve the ordering of priorities and the allocation of finite resources, are matters for the executive and legislative branches of government and the place to question their wisdom lies not in the courts but elsewhere (see, Jones v Beame, 45 NY2d 402; Matter of Abrams v New York City Tr. Auth., 39 NY2d 990).
Plaintiffs do not question the wisdom of the Legislature’s action, however. On the contrary, they contend that the Legislature, by enacting Social Services Law § 350 (1) (a), has decided that shelter allowances to ADC recipients shall be adequate to maintain a family in a home-type setting and they seek to compel the Commissioner of Social Services to implement that legislative decision by establishing grants at levels adequate for the purpose. They contend that the statute is not simply a guide for the Commissioner when exercising his discretion on the subject but establishes a standard of care which executive officers must meet unless or until the Legislature changes it. If the statute is the latter then the dispute is justiciable because the courts may compel obedience to a statutory command. If the Legislature left the matter to the judgment of the Commissioner, then the issue is beyond review for the courts may not substitute judicial oversight for *416 the discretionary management of the public’s business by public officers (see, McCain v Koch, 70 NY2d 109; Matter of Dental Socy. v Carey, 61 NY2d 330; Klostermann v Cuomo, 61 NY2d 525).
II
The provision of assistance to the needy is not a matter of legislative grace but is specifically mandated by the New York State Constitution (Tucker v Toia, 43 NY2d 1, 7). It provides that the "aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and by such manner and by such means, as the legislature may from time to time determine” (NY Const, art XVII, § 1). The Legislature has implemented this constitutional provision primarily by three programs set forth in the Social Services Law: Aid to Families with Dependent Children, Supplemental Security Income Program, and Home Relief. The program under consideration here, Aid to Families with Dependent Children, is a joint Federal-State program designed to provide support to needy families with children (42 USC § 601 et seq.; Social Services Law §§ 343-362). Pursuant to it, States determine the levels of benefits paid and the Federal Government reimburses 50% of the costs (42 USC § 602).
Public assistance consists of two main components, basic grants for food and other necessities and shelter grants. The Legislature has specified the dollar amounts of monthly assistance payable to recipients for basic grants but it has directed that the amount of shelter allowances shall be set administratively to reflect local rent levels in the various areas of the State (Social Services Law § 131-a [1]). To implement this administrative responsibility, the Department has enacted regulations which entitle recipients to shelter allowances equal to their actual rent, subject to a fixed ceiling which varies from district to district and which is also adjusted for the number of persons in the family unit. In January 1988 defendant Perales, the State Commissioner of Social Services, promulgated the current schedule which establishes a maximum grant of $215 per month for a family of one in New York City for apartments where heat is included in the rent, increasing incrementally to a maximum of $421 per month for a family of eight or more persons (see, 18 NYCRR 352.3 [a]).
Plaintiffs contend that these allowances are not adequate. They assert that in 1987, when this action was commenced, *417 over 60% of all ADC recipients living in private housing were forced to pay rents in excess of the established shelter allowances and that even under the current regulations, which increased allowances an average 13%, effective January 1, 1988, no more than 65% of all public assistance recipients in New York City receive reasonable rental allowances. Defendant City Commissioner places the figure even lower.
Ill
Analysis starts with the language of the statute. Section 350 (1) (a) of the Social Services Law provides: "Allowances shall be adequate to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law. Allowances shall provide for the support, maintenance and needs of one or both parents if in need, and in the home” (emphasis added).
Also relevant to plaintiffs’ claim are section 344 (2) of the Social Services Law which states that under the ADC program "[a]id shall be construed to include services, particularly those services which may be necessary for each child in the light of the particular home conditions and his other needs” and section 350-j (3) which requires that "[e]mergency assistance to needy families with children shall be provided * * * when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home”. We construe these provisions as manifesting the Legislature’s determination that family units should be kept together in a home-type setting and imposing a duty on the Department of JSocial Services to establish shelter allowances adequate for that purpose. A schedule establishing assistance levels so low that it forces large numbers of families with dependent children into homelessness does not meet the statutory standard.
Our interpretation rests first on the words used in the statute: they import duty, not discretion. Section 350 (1) (a) of the Social Services Law states that aid to achieve the stated goals "shall” be provided and "shall” be adequate. Similarly, section 344, which imposes on public welfare districts an obligation to provide ADC benefits, states in subdivision (2), that aid for ADC "shall * * * include services which may be necessary for each child in the light of the particular home conditions and his other needs.” In contrast, words found *418 elsewhere in section 350 signify a legislative grant of discretion. Thus, subdivision (1) (b) provides that "[wjhen permitted in accordance with regulations of the department, provision may be made” for certain items of medical assistance. Similarly, subdivision (1) (f) provides that care in special facilities "may be provided” during pregnancy if "in the judgment of the social services official” care cannot be provided in the home.
Notwithstanding this language, the Attorney-General contends that the cross-references in section 350 (1) (a) to "section [131-a] and other applicable provisions of law” (which are not unique to section 350 but common to several different programs) were inserted by the Legislature in a 1969 amendment to the statute (L 1969, ch 184, §§ 1, 15) to give the Commissioner broad discretion in setting assistance levels in an effort to control rising public assistance expenditures and qualify its provisions.
We reviewed the legislative purpose of chapter 184 in Matter of Bernstein v Toia (43 NY2d 437, supra) when we approved the use of flat grants for shelter allowances. We recognized that the amendment was intended to effectuate economies when we noted that such grants were an acceptable alternative to individually constructed grants of assistance formerly used and that their use met the amendment’s purpose of making "optimum responsible use of the not unlimited funds” (supra, at 446) available for public assistance by limiting the administrative expenses otherwise incurred by individualized grant calculation (see also, Baumes v Lavine, 38 NY2d 296, 299-302). But nothing in chapter 184, or our construction of it in Bernstein, changed the pre-1969 statutory requirements of adequacy. While section 131-a directs defendants to pay housing grants and provides the Commissioner with discretion in setting them based upon local housing conditions, it does not supplant or limit the standard of adequacy prescribed for housing allowances for ADC families found in section 350 (1) (a).[3]
The other "applicable provisions of law” relied on by the *419 Attorney-General, but not expressly mentioned in section 350, are found in section 131, which relates to the general duty of social services officials to provide care. The section provides in subdivision (1), however, that shelter allowances must be set "in accordance with the requirements of this article and other provisions of this chapter” and thereby incorporates the "adequacy” standard of section 350 (1) (a).
Beyond these general arguments, the Attorney-General also cites to specific words in section 131 which he identifies as language evidencing discretion in the Commissioner. He relies on subdivision (1), which states that it is the duty of social services officials to provide adequately for the needy "insofar as funds are available for that purpose”, and the words appearing in subdivision (3)[4] which provide that "[a]s far as possible” families shall be kept together and assistance and service shall be given a needy person in his own home "[w]henever practicable.”
The contention that the general provision of subdivision (1) referring to the availability of funds supersedes the obligation of section 350, and all other specific statutory provisions, runs counter to accepted rules of statutory construction which hold that when there are general and particular provisions in a statute the "general does not override the particular but applies only where the particular provision is inapplicable” (People v Lawrence, 64 NY2d 200, 204). To hold in this case that these words supersede the mandate of section 350 (1) (a) would make all specific requirements of the Social Services Law subject to the discretion of the Commissioner, notwithstanding legislative mandate, because their enforcement requires the expenditure of funds.
Nor are we persuaded by the cited words from subdivision (3). That section also states that recipients "shall not be separated for reasons of poverty alone, and they shall be provided services to maintain and strengthen family life”, thus suggesting that the qualifying words identified by the *420 Attorney-General refer to nonfinancial matters, such as medical problems or the need to protect children from abuse.
Finally, we do not agree that in enacting section 350 (1) (a) the Legislature could not have intended the construction we adopt because ADC assistance is provided only to needy children deprived of parental support (Social Services Law § 349 [B]) and some do not receive the benefits of the program. ADC is the primary program in the State for ensuring the welfare of needy children. Plaintiffs allege that it covers approximately 98% of those living in New York City who receive public assistance benefits. In contrast, eligibility for Home Relief, the other basic program of assistance in New York, is not contingent upon the presence of children in the household and it is not specifically designed to deal with their needs. Given the different focuses of the two programs it is reasonable that the Legislature provided special protection to ensure the health and well-being of children in a program that is dedicated to protecting the welfare of children deprived of parental support.
In concluding, we note that New York has a long history of protecting children in the home (see generally, Bond, Social Welfare Legislation, 1946 NY Legis Ann, at 284-287). The first legislation dealing specifically with the subject was the Child Welfare Act of 1915 (L 1915, ch 228) which established county Boards of Child Welfare and authorized them to "grant allowances to widowed mothers with one or more children under the age of sixteen years, in order that such children may be suitably cared for in their homes”. The legislative commission that drafted the 1915 act explained that its principal purpose was to ensure that children be raised in the home: "The normal development of childhood is one of the main functions of government. The best education requires a proper home training, and it thereby becomes the duty of the State to conserve the home as its most valuable asset whenever factors, other than improper guardianship of the parents, threaten its destruction” (Report of New York State Commission on Relief for Widowed Mothers, 1914 NY Senate Doc No. 64, at 3). Thus, during a period when the needy generally were cared for in institutional poor houses, the Legislature provided special protections for mothers with dependent children, so that the children could be raised in their homes. Moreover, when the Legislature eliminated a cap on ADC payments which had restricted grants to the cost of providing institutional care (see, L 1935, ch 547, § 1), the then State *421 Commissioner of Public Welfare explained that the new provision provided for the calculation of allowances “in accordance with the actual minimum needs of the families to be cared for” (Letter of David C. Adie, Commissioner of New York State Department of Social Welfare to Governor Herbert Lehman, Apr. 10, 1935, Governor’s Bill Jacket, L 1935, ch 547). He recognized that “this bill if it becomes law may tend to increase * * * relief expenditures” but he recommended its approval, nonetheless, because the prior law made it "impossible * * * to give adequate relief’ (id.). We are referred to nothing in subsequent amendments which has altered the historical concept that families should be kept together in a home-type setting.
We conclude, therefore, that when the Legislature directed that shelter allowances "shall be adequate”, it imposed a duty on the Commissioner to establish a schedule reasonably calculated for that purpose. Manifestly, the Legislature may or may not appropriate funds necessary to fund these obligations, but the Commissioner does not discharge this statutory duty unless he complies with the mandate contained in Social Services Law § 350 (1) (a).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the motions to dismiss the complaint denied.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. Plaintiff Jiggetts has subsequently withdrawn from the case and the action against her landlord, Ocean Park Company, has been discontinued.

. The action was commenced as a class action but the Appellate Division, relying on Matter of Jones v Berman (37 NY2d 42), held class action relief unnecessary. It also held that defendant City Commissioner was not a proper party (see, Jiggetts v Grinker, 148 AD2d 1, 21). The only issue plaintiffs assert on this appeal is the legal sufficiency of the complaint under CPLR 3211 (a) (7), i.e., whether a duty is imposed on defendant State Commissioner of Social Services to establish "adequate” shelter allowances.

. Petitioners did not challenge the adequacy of the grants in Bernstein but significantly, in upholding the Department’s methodology, we described the flat grant concept as one in which "after statistical and qualitative analysis of a fair sampling of individual grants, a uniform figure is fixed that is determined to be adequate in general to meet the needs in question” (43 NY2d 437, 444). In Bernstein the schedules adopted equaled the 95th percentile of such actual allowances (id., at 447).

. Section 131 (3) provides: "3. As far as possible families shall be kept together, they shall not be separated for reasons of poverty alone, and they shall be provided services to maintain and strengthen family life. In providing such services, the public welfare official may utilize appropriate community resources, including non-profit private agencies. Whenever practicable, assistance and service shall be given a needy person in his own home. The commissioner of public welfare may, however, in his discretion, provide assistance and care in a boarding home, a home of a relative, a public or private home or institution, or in a hospital” (emphasis added).