OPINION OF THE COURT
Karla Moskowitz, J.
These motions, numbers 98 and 100, seeking intervention and temporary relief are consolidated for disposition. In this long running case that this court has presided over since its inception and that is now posttrial, two mothers seek to intervene on behalf of themselves and their families, requesting that this court stay their imminent eviction from homes where they have resided for many years. They claim that Social Services Law § 350 (1) (a), the decision of the New York State Court of Appeals in Jiggetts v Grinker (75 NY2d 411 [1990]) and this court’s decision after trial and judgment require that shelter allowances, under the Safety Net Assistance (SNA) program (Social Services Law §§ 343-360) and the Temporary Shelter Supplements (TSS) regulations (18 NYCRR 370.10) are adequate to cover the reasonable costs of housing in New York City.
Proposed plaintiflfs-intervenors (plaintiffs) seek an order requiring the State Department of Social Services (defendant or State) to direct the payment of all of plaintiffs’ arrears to date and to provide them with a monthly shelter grant in the full amount of their rent, less third-party contributions, if any. Upon all the papers the parties submitted on this motion and the oral argument on November 26, 2002, the court finds that *680 plaintiffs are entitled to intervene and to temporary injunctive relief.
Legal Background
A. This Case and the Prior Statutory Framework
The original plaintiffs brought this action under the public assistance program known as Aid to Dependent Children (ADC). ADC was the state promulgation of the federal Aid to Families with Dependent Children (AFDC) program. In 1990, the New York Court of Appeals determined that New York’s Social Services Law § 350 (1) (a) imposes a duty on the State Commissioner of Social Services to establish shelter allowances for ADC recipients bearing a reasonable relationship to the cost of housing in New York City. (See Jiggetts v Grinker, 75 NY2d 411, 417 [1990].) In so holding, the Court of Appeals relied on the statute’s express language:
“1. (a) Allowances shall be adequate to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law. Allowances shall provide for the support, maintenance and needs of one or both parents if in need, and in the home and for the support, maintenance and needs of the other relative if he or she is without sufficient means of support, provided such parent, parents and relative are not receiving federal supplemental security income payments and/or additional state payments for which they are eligible. The social services official may, in his discretion, make the incapacitated parent the grantee of the allowance and when allowances are granted for the aid of a child or children due to the unemployment of a parent, such official may make the unemployed parent the grantee of the allowance.” (Emphasis supplied.)
Section 350 (1) (a) remains unchanged today.
The Court of Appeals then remanded the case back to this court for a determination as to whether the shelter allowances that the Commissioner had established previously in 1988 were adequate under the statutory standard. (Id.)
After a 3V2-month trial, this court found that the 1988 shelter allowances did not bear a reasonable relationship to *681 the cost of housing in New York City and ordered the Commissioner to “develop and submit to the Secretary of State for promulgation by March 2, 1998 or, on application to the court, by a reasonable date thereafter, a proposed schedule of shelter allowances for [New York City participants in the AFDC program] and any successor program.” The Appellate Division affirmed this decision. (See Jiggetts v Dowling, 261 AD2d 144 [1999].) To date, the Commissioner has not complied with the court’s order, but recently, on July 19, 2002 and in February 2003, the Commissioner proposed regulations to increase shelter allowances. Thus, the shelter allowances for New York City remain inadequate.
Because the court had found that shelter allowances did not bear a reasonable relationship to housing costs in New York City and, in order to avoid the need for repeated intervention motions in this action, this court directed the parties to operate an interim relief system for families with children who face eviction solely because of the inadequacy of the shelter allowance schedule (Jiggetts interim relief). Plaintiffs contend that today the State routinely approves requests for Jiggetts interim relief according to the following schedule:
[[Image here]]
The State adopted these figures in the early and mid-1990’s. Plaintiffs contend that, because housing costs have continually escalated since that time, this schedule is about $100 to $200 below the actual housing costs today in New York City for each household size for families who face eviction.
B. The Current Statutory Framework
In 1996, Congress replaced the AFDC program with a five-year time limited program known as Temporary Assistance to Needy Families (TANF). In 1997, New York State replaced the ADC program with the Family Assistance (FA) program. (See Social Services Law §§ 343-360.) This new state-federal statutory scheme prohibits receipt of funds for more than 60 months during a recipient’s lifetime, regardless of need. (See 42 USC § 608 [a] [7] [A].)
For families receiving FA who reach the federal five-year time limit, the New York State Legislature enacted the SNA program. (Social Services Law §§ 157-165.) When a family receiving FA reaches the federal five-year time limit, the family interviews with the requisite local agency. If the family *682 wishes to continue receiving assistance, that agency transfers that family to the SNA program. Under Social Services Law § 157 (1), SNA means
“allowances pursuant to section one hundred thirty-one-a for all support, maintenance and need, and costs of suitable training in a trade to enable a person to become self-supporting, furnished eligible needy persons in accordance with applicable provisions of law, * * * to persons or their dependents in their abode or habitation whenever possible * * * but does not include * * * family assistance or medical assistance for needy persons granted under titles ten and eleven, respectively, or aid to persons receiving federal supplemental security income payments and/or additional state payments.”
As part of the State Operations and Aid to Locality Budget for the 2001-2002 fiscal year, the Legislature directed the Office of Temporary and Disability Assistance (OTDA) (formerly the New York State Department of Social Services) to spend funds to “reimburse one-half of the non-federal share of the cost of rent supplements that shall be made to cases that include a child in receipt of Safety Net Assistance when such supplements are necessary to prevent eviction” and “such cases were in receipt of such supplements as family assistance recipients pursuant to a decision of the commissioner as he or she determines necessary to address litigation or pursuant to an order of a court of competent jurisdiction pending final adjudication of litigation and transferred to safety net assistance” (L 2001, ch 149, part A, § 70; L 2001, ch 53, § 1 [attached as exhibit 1 to the affidavit of Robert Sharkey, sworn to Nov. 13, 2002 (Sharkey affidavit)]). The Legislature also provided “that payment of such rent supplements shall be made in accordance with procedures and conditions that the Commissioner may establish, subject to the approval of the director of the budget, to limit fraud and foster client self-sufficiency.” (See Sharkey affidavit, 14, exhibit 1.) According to defendant, the Legislature enacted a similar provision for the 2002-2003 fiscal year. (Sharkey affidavit 15.)
The State has taken the position that Social Services Law § 350 (1) (a) requiring adequate allowances does not apply to SNA recipients because the SNA is not a “successor program” to the AFDC. The State contends that the FA is the only successor program to the AFDC and that those families whose *683 time under the FA program has expired no longer have a right to adequate allowances. In addition, the State contends that because section 350 is the basis for Jiggetts interim relief, then those families who have reached their time limits under the FA program are not eligible for Jiggetts interim relief either. Accordingly, OTDA filed regulations on an emergency basis on November 30, 2001. It created the Temporary Shelter Supplement in those regulations. (See 18 NYCRR 370.10.) The regulations provide that the supplement in TSS could not exceed the amount of supplement that would have been available by way of Jiggetts interim relief. (See Sharkey affidavit 19.) The State contends that it was necessary to file the regulations on an emergency basis because the first families would begin losing eligibility for family assistance under the federally mandated time limits on December 1, 2001. (See Sharkey affidavit 16.)
Proposed Plaintiffs-intervenors’ Factual Background
The court has taken the following facts from proposed plaintiffs-intervenors’ complaints:
Iriada Cuevas
Proposed plaintiff-intervenor Iriada Cuevas lives at 2588 Crestón Avenue, apartment 31, Bronx, New York, with three daughters, ages 5, 13, and 14. Her three-bedroom apartment, that is rent stabilized, currently costs $813.63 per month. The family has lived in this apartment for over 10 years. Ms. Cuevas received her Bachelor’s degree from Lehman College this past summer. She is now looking for full-time employment that will allow her to support herself and her three children financially without continued assistance from the Department of Social Services.
Until December 2001, when she reached the federal five-year time limit, Ms. Cuevas received assistance under the FA program. Beginning in January 2002, she transferred from the FA program to SNA.
As a FA recipient, Ms. Cuevas received Jiggetts interim relief of $388 a month. Her total grant for rent was $700 per month. In December 2001, Ms. Cuevas’ rent was $782.34. Ms. Cuevas mother, Bernarda Herrara, who was working at the time as a health care assistant, agreed to pay the balance of the rent due (the difference between $700 and $782.34) as a third-party contribution.
In October 2001, Ms. Cuevas began withholding her third-party contribution of $82.34 in order to compel her landlord to *684 make repairs to her apartment. From October 2001 until February 2002, Ms. Cuevas saved Ms. Herrara’s contribution of $82.34, and would have continued to do so had her mother not lost her job March 2002. In December 2001, Ms. Cuevas’ landlord, Crestón Associates, LLC, sued her for nonpayment of rent.
In January 2002, Ms. Cuevas’ public assistance case was sanctioned because she missed an appointment with New York’s Human Resources Administration (HRA). Ms. Cuevas missed that appointment because HRA had her address listed incorrectly in its computer system and Ms. Cuevas therefore never received notice of the appointment. HRA lifted the sanction in March 2002. During the sanction period, the sanctioned portion of the shelter grant was restricted from Ms. Cuevas’“food and other” grant. This sanction did not, therefore, affect Ms. Cuevas’ shelter allowance of $312, that continued to be paid directly to her landlord.
In July 2002, Ms. Cuevas received a four percent rent stabilization rent increase that increased her rent from $782.34 to $813.63 per month. On July 22, 2002, Ms. Cuevas appeared in court pro se and signed a stipulation with her landlord’s attorney staying execution of a warrant of eviction through August 9, 2002 for payment of $3,874.26, representing all rent owing through July 2002. In August 2002, with the assistance of the Citizens Advice Bureau (CAB), a community-based organization in the Bronx, Ms. Cuevas applied for a restoration, of her Jiggetts interim relief retroactive to January.
Because Ms. Cuevas had transitioned from the FA to the SNA program in December 2001, having reached her federal five-year time limit, OTDA treated her application as one for TSS benefits. On August 22, 2002, OTDA returned the application for relief to CAB stating “[p]er TSS regulations third parties are no longer allowed. Any contribution must be taken from * * * F&O for no more than $100.”
Thus, because Ms. Cuevas’ rent exceeds $800 (the $700 TSS maximum plus the maximum $100 restriction from the “food and other” grant) by $13.63, OTDA denied her application for TSS benefits entirely.
OTDA denied Ms. Cuevas’ request for assistance two other times: (1) after a secondary review subsequent to submission of additional documentation regarding Ms. Cuevas’ and her daughters’ compelling need to stay in their home, and (2) at the desk review level.
Ms. Cuevas relies on the help of her mother, who lives only three blocks away, to pick the children up at school and watch *685 them while she looks for a job. Her mother will also be available for child care once Ms. Cuevas starts working. All three children attend local schools that are within walking distance of their home. Ms. Cuevas’ daughter, Katherine, is enrolled in “gifted” classes this fall. Ms. Cuevas’ children are patients of a local physician whose office is within walking distance from their home.
Several real estate agencies have informed Ms. Cuevas that there are no three-bedroom apartments available that rented for less than or equal to her current rent of $813.63, regardless of the type of building or the neighborhood. Instead, these agencies informed her that many rented for considerably higher amounts.
Ms. Cuevas received a notice of eviction dated August 16, 2002. Although the housing court stayed execution of the warrant of eviction through September 30, 2002, she can be evicted at any time now.
Josephina Quirox
Proposed plaintiff-intervenor Josephina Quirox lives in a two-bedroom apartment at Morris Avenue, apartment 6N, Bronx, New York 10468, with her son, age 12, and her daughter, age 3. Her rent is $778.97 per month. The current legal rent on the apartment is actually $833.22 per month. Ms. Quirox has lived in this apartment for nearly eight years.
Prior to the end of May 2002, Ms. Quirox received interim relief of $364 per month. She also receives a shelter allowance of $286 per month from the city’s Human Resources Administration. She also receives $233.30 in cash and $360 in food stamps to cover all other living expenses. In addition, Ms. Quirox’ brother, Luis Ogando, agreed to pay $128.97 per month as a third-party contributor.
In May 2002, HRA terminated Ms. Quirox’ public assistance because at that point her employment income had become sufficient to satisfy the financial needs of her family. At the same time, Ms. Quirox stopped receiving Jiggetts interim relief.
On May 11, 2002, Ms. Quirox lost her employment because the elderly individual whom she assisted died. She has been unable to find another placement.
After her employment terminated, Ms. Quirox reapplied for public assistance. HRA reopened her case as a SNA case because Ms. Quirox had reached her federal five-year time limit on receipt of TANF assistance.
*686 In September 2002, Ms. Quirox’ landlord, 2690 Morris Avenue Associates, sued her for nonpayment of rent. On October 11, 2002, Ms. Quirox applied for a restoration of her Jiggetts interim relief retroactive to May 2002.
Because OTDA classified Ms. Quirox as a SNA recipient, it treated her application as one for TSS benefits. On October 28, 2002, OTDA returned Ms. Quirox’ application because per TSS regulations (1) she could no longer have third-party contributions; (2) she could only contribute up to $100 from her food and other allowance; and (3) her rent exceeded $750, the $650 TSS maximum plus the maximum $100 restriction from the food and other grant. On November 15, 2002, OTDA stated that they were denying Ms. Quirox’ application.
Similar to Ms. Cuevas, Ms. Quirox relies on the help of nearby family members to help care for her children. In addition, three real estate agencies have told Ms. Quirox that there are no two-bedroom apartments that rent for less than her current rent. It is Ms. Quirox’ understanding that, even if OTDA had approved her excess rent, it would have reduced her food stamps by $120 per month.
Relief Sought
Both plaintiffs seek to intervene in this action on the grounds that their situation has questions of law or fact in common with those of the Jiggetts action. Plaintiffs also seek to join their landlords as defendants. After intervening, plaintiffs will seek to amend the complaint to bring before the court “additional or subsequent transactions or occurrences” involving the substantial increases in both rent levels and homelessness and the changes in the statutory scheme since the trial of this case in 1991.
The main relief plaintiffs seek is equitable. Plaintiffs seek (1) a judgment declaring that the schedule of maximum shelter grants for families residing in New York City set forth in 18 NYCRR former 353.3 (now 18 NYCRR 370.10 [the TSS regulations]) is inadequate; (2) an injunction permanently enjoining the State defendant from applying a maximum rent schedule for public assistance families residing in New York City that does not enable these families to obtain and maintain housing in New York City; and (3) an order directing the State to pay all of plaintiffs’ arrears and provide them with a monthly shelter grant of the full amount of their rent less any third-party contributions. Plaintiffs also seek attorneys’ fees pursuant to 42 USC § 1988.
*687 Discussion
I. Standing
The parties do not dispute that, but for the current time limits, plaintiffs, as parents with minor children facing eviction, would qualify for family assistance under the FA statute. Defendants predicate most of their opposition to all of the relief that plaintiffs seek on the argument that the adequacy standard from New York’s Social Services Law § 350 (1) (a) does not apply to SNA recipients and therefore plaintiffs lack standing to use section 350 (1) (a) as a basis to challenge the State’s denial of their applications. Plaintiffs argue that the State has an obligation to provide adequate shelter allowances no matter the funding source. Because the other issues in the case rise and fall upon whether the adequacy standard from section 350 (1) (a) applies to SNA, the court will address this issue first.
A. The Language of Section 350 (1) (a) Does Not Limit Its Applicability to Recipients of Family Assistance
A plain reading of section 350 (1) (a), including what that statute does not say, favors plaintiffs’ position. Section 350 (1) (a) makes no mention of limiting its applicability to recipients of FA, or even to families who have received cash assistance for more than five years. Indeed, the statute does not even mention FA. Surely the Legislature could have expressly limited section 350 (1) (a) to FA recipients had it meant to do so. The Legislature had ample opportunity in 1997 when it undertook a comprehensive amendment to the State’s welfare laws. At that time, the Legislature took care to insert references to “family assistance” where it wanted those words to appear. (See, e.g., § 348 [1] [“(a)pplication for family assistance shall be made to the appropriate social services district”]; § 349 [A] [“(f)amily assistance shall be given to a pregnant individual, a parent or other relative as herein specified for the benefit of a child under eighteen * * *”]; see also § 352-a [1]; § 353 [a].)
In chapter 436 (§ 37) of the Laws of 1997, the Legislature looked directly at section 350 of the Social Services Law and repealed some and amended other parts of that section, including paragraph (c) of subdivision (1). (L 1997, ch 436, § 37.) Thus, the Legislature could have amended section 350 (1) (a). It did not. Accordingly, it is clear that the Legislature intended section 350 (1) (a) to continue to apply as it had before.
Now for what the statute does state. By its plain language, section 350 (1) (a) applies to families with minor children. Sec *688 tion 350 (1) (a) requires that shelter allowances be adequate to enable parents “to bring up the child properly, having regard for the physical, mental and moral well-being of such child * * * in the home.” (Emphasis supplied.) The statute contains no restriction on the funding source.[1] Thus, the allowances that must be “adequate” under section 350 (1) (a) include shelter allowance payments for families with minor children under whichever program those allowances are paid.
This reading is consistent with this court’s language in this case making the judgment applicable to “any successor program” to the Aid to Dependent Children program. This language meant to ensure the adequacy of shelter allowances in any future program that provides public assistance to families with dependent children. To the extent that the SNA program assists families with dependent children who reach their federal time limits, the program serves precisely that purpose. Accordingly, the “successor program” language of the judgment covers families with dependent children who transition into the SNA program.[2]
B. Location of Section 350 (1) (a)
Title 10 of the Social Services Law is entitled “Aid to Dependent Children.” Section 141 of the 1997 Welfare Reform Act (L 1997, ch 436, part B) provided that “references to ‘aid to dependent children’ * * * shall refer to the family assistance program.” The State argues that because section 350 (1) (a) is located within title 10, it thus only applies to the FA program. This argument is a non sequitur. That section 350 (1) (a) is located within title 10 does not establish that section 350 has no applicability outside the FA program. (See McKinney’s Cons Law of NY, Book 1, Statutes § 123 [b] [“(a) heading of a portion of a statute such as a chapter or a section usually is not a part of *689 the act and does not extend or restrict the language contained in the body of the statute * * *”]; see also Squadrito v Greibsch, 1 NY2d 471, 475 [1956] [“(t)he character of a statute * * * is to be determined by its provisions, and not by its title”].) Thus, to limit section 350 (1) (a)’s applicability to the FA program merely because it is located within title 10 would elevate form over substance, particularly when section 350 (1) (a) expressly applies to families with minor children.
C. Home Relief as Predecessor Statute
Defendants further contend that the Home Relief statute is the predecessor statute to the SNA statute and that because the Home Relief statute does not contain an “adequacy” requirement, then the SNA statute does not contain one either. Defendants cite Matter of Gautam v Perales (179 AD2d 509, 511 [1992]), in which the First Department held that the adequacy requirement of section 350 (1) (a) did not apply to adults receiving aid under the Home Relief program. However, in Gautam, the First Department only decided that there was no adequacy requirement for adult single males. Indeed, the First Department distinguished Jiggetts on the ground that the Court of Appeals had expressly recognized that the Legislature intended to keep families together. As discussed earlier, section 350 by its terms applies to families with children. Gautam is further inapplicable because it predates the five-year time limits on federal assistance. Thus, even if the SNA is the successor to the Home Relief statute, this does not mean that section 350’s adequacy requirement does not apply to it. Further, as stated earlier, the judgment in this case applies to the ADC and “any successor program.”
D. The 2001-2002 Appropriation Laws
Defendants argue that, because the Legislature authorized the State to provide supplemental shelter allowances for time-limited families, it must have meant for the adequacy requirement in section 350 not to apply, because otherwise there would be no need for the Legislature to provide for extra funding in the budget.
However, it could just as easily be said that the Legislature authorized the appropriations precisely because it meant to continue section 350’s mandate. By stepping in to ensure that funds are available to provide for adequate allowances for time-limited families, the Legislature demonstrated the continuing applicability of the adequacy requirement for those families.
In light of this court’s determination, there is no need to address the constitutional arguments plaintiffs have raised. (See *690 Matter of Beach v Shanley, 62 NY2d 241, 254 [1984] [courts should not decide constitutional questions when the issue is determinable on nonconstitutional grounds].)
II. Intervention
A. Plaintiffs
Plaintiffs’ motions to intervene are granted. CPLR 1013 permits any person to intervene in an action when that “person’s claim or defense and the main action have a common question of law or fact.” The issue central to plaintiffs’ case is that the shelter allowance bears no reasonable relation to the costs of housing in New York City. This is also the central issue in the main action.
The State makes a number of arguments in opposition to plaintiffs’ application to intervene. The first is that plaintiffs’ motion to intervene is untimely. Although this case certainly has a long history, HRA did not deny Ms. Cuevas’ application until September of 2002. OTDA denied Ms. Quirox’ application in October 2002. Thus, plaintiffs could not have brought these motions to intervene any earlier.
The State also argues that because plaintiffs are SNA, their suit lacks commonality with the main action that concerned only the ADC and later the FA. However, as discussed above, the central issue in both suits is the applicability of the adequacy requirement from section 350 to those statutes and it would not serve judicial economy to require plaintiffs to start another action on precisely this issue.
The State also makes the naked assertion that it would be “grossly prejudiced” should this court grant intervention. However, this court fails to see the prejudice particularly when not granting intervention would only result in the State defending itself in an entirely new action.
B. Joinder of Landlords as Defendants-Intervenors
Plaintiff Cuevas’ landlord, Crestón Associates, LLC (Crestón), and plaintiff Quirox’ landlord, 2960 Morris Avenue Associates (Morris), are added as defendants. The temporary restraining order as to Morris and Crestón staying them from evicting plaintiffs-intervenors is continued.
III. Entitlement to Injunctive Relief
To demonstrate entitlement to injunctive relief, plaintiffs must show (1) a likelihood of success on the merits; (2) that they would suffer irreparable harm were this court not to grant an injunction; and (3) that the balance of the equities favors plaintiffs. As stated earlier, plaintiffs have demonstrated a *691 likelihood of success on the issue that they have a right to adequate shelter allowances. If this court does not grant a preliminary injunction, plaintiffs will suffer irreparable harm in the truest sense — they and their young children will face eviction from their homes and likely homelessness. Obviously then, the balance of the equities favors plaintiffs over the State that will suffer only monetary loss should the injunction prove improvident.
IV. Attorneys’ Fees
The court orders defendants to pay plaintiffs-intervenors’ attorneys’ fees pursuant to this court’s prior decision and order dated August 6, 2002.
The court has considered defendants’ other contentions and finds them without merit.

. The history and purpose of section 350 (1) (a) reinforces this conclusion. As the Court of Appeals recognized in Jiggetts v Grinker (75 NY2d 411, 420 [1990]), “New York has a long history of protecting children in the home.” Since 1915, the Legislature has directed localities to grant allowances sufficient to ensure that “children may be suitably cared for in their homes.” (Id.) Indeed, the Court of Appeals noted that “the legislative commission that drafted the 1915 act explained that its principal purpose was to ensure that children be raised in the home.” (Id.) Had the Legislature intended a drastic change to its 80-year-old mandate of requiring that allowances for families with children be adequate to raise children “in the home,” surely it would have said so specifically.

. This holding is consistent with the decision of Justice DiBlasi in Rodriguez v Wing (Index No. 13815/2001, Westchester County, Jan. 17, 2002), in which the court rejected defendants’ argument that plaintiffs were not entitled to adequate shelter allowances because they were SNA recipients.