[799 NYS2d 460]

BARBARA JIGGETTS et al., Respondents, and IRAIDA CUEVAS et al., Intervenors-Respondents, v MICHAEL DOWLING, as Commissioner of the New York State Department of Social Services, Appellant, et al., Intervenors-Defendants.

First Department, July 21, 2005

## APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General*, New York City (*Oren L. Zeve* and *Michael S. Belohlavek* of counsel), for appellant.

*Steven Banks, The Legal Aid Society*, New York City (*Scott A. Rosenberg* and *Richard Blum* of counsel), *Emily Ruben, Brooklyn Neighborhood Office* (*Susan C. Bahn* of counsel), *Marshall Green, Bronx Neighborhood Office* (*Allison Baker* of counsel), *Marie Richardson, Lower Manhattan Neighborhood Office* (*Jack Stoller* of counsel), *Adriene Holder, Greater Harlem Neighborhood Office* (*Allyson Sackey* of counsel), *David W. Weschler, Community Law Offices* (*Elizabeth Maris* of counsel), and *April Newbauer, Queens Neighborhood Office* (*Kyla Ratliff* of counsel), for respondents.

*Community Service Society of New York*, New York City (*Juan Cartagena* and *Risa E. Kaufman* of counsel), for Community Service Society and others, amici curiae.

## OPINION OF THE COURT

BUCKLEY, P.J.

The proposed intervenors seek to resuscitate an expired action, already tried to final judgment, and to metamorphose it into an entirely new matter, entailing different facts, subsequently enacted statutes, and novel legal theories.

This class action for declaratory judgment and injunctive relief was commenced in 1987, on behalf of recipients of public assistance residing in New York City, challenging the adequacy of shelter allowances paid by defendants under the federally funded Aid to Families with Dependent Children (AFDC), promulgated in New York State as Aid to Dependent Children (ADC). Until the postjudgment intervention motions at issue on this appeal, this case was litigated only by plaintiffs who fit the

federal and New York categorical eligibility requirements for AFDC and ADC (*see Jiggetts v Grinker*, 75 NY2d 411, 416-417 [1990]; *Jiggetts v Dowling*, 261 AD2d 144, 145 [1999], *lv dismissed* 94 NY2d 796 [1999]; *Jiggetts v Dowling*, 3 AD3d 326, 327 [2004], *lv denied* 3 NY3d 603 [2004]). Following a lengthy trial, at which all issues except attorneys' fees were determined, the IAS court entered judgment in favor of plaintiffs, and declaring, inter alia, that the shelter allowance for New York City recipients of AFDC was contrary to law as not reasonably related to the cost of housing in the City; this Court affirmed (261 AD2d 144 [1999]), and the Court of Appeals dismissed defendants' motion for leave to appeal on the ground that "the order sought to be appealed from does not finally determine the action within the meaning of the Constitution" (94 NY2d 796 [1999]), since the issue of attorneys' fees was still outstanding. On August 9, 2002, the IAS court entered an order and judgment (one paper), which on its face merely awarded plaintiffs attorneys' fees. However, because of the procedural history of the case, that order and judgment constituted a final disposition. Moreover, this Court's reversal of the award of attorneys' fees (3 AD3d 326 [2004]) did not negate the finality of the case. Indeed, the Court of Appeals denied leave to appeal (3 NY3d 603 [2004]), thereby indicating the finality of the contested paper, rather than dismissing the leave application, as it had on the prior application, where the judgment was deemed nonfinal. Thus, the August 9, 2002 order and judgment effected a final adjudication of the action. As is evident from the dissent, the only matter still pending in this action is defendants' postjudgment compliance; in effect, plaintiffs are attempting to "collect" on their judgment, not litigate undetermined claims.

By order to show cause dated October 11, 2002, two months after entry of final judgment by the IAS court, the first proposed intervenor moved to intervene.

It is undisputed that the parties allowed to intervene by the IAS court at this post-final judgment stage are not eligible for AFDC, since that federally funded program was terminated and replaced in 1997 by the federal Temporary Assistance to Needy Families (TANF), adopted in New York as Family Assistance (FA). It is also undisputed that the proposed intervenors do not satisfy the eligibility requirements of TANF or FA. Rather, the proposed intervenors are recipients of benefits under the state Safety Net Assistance (SNA) program, which entails different standards and guidelines.

The liability issue already resolved by this litigation (whether the state defendant violated Social Services Law § 350 [1] [a] by failing to establish for AFDC recipients shelter allowances that bear a reasonable relation to the cost of housing in New York City) is quite different from the wide range of issues which need to be aired to ascertain the rights of the proposed intervenors. In order to assert the rights obtained by plaintiffs, the proposed intervenors have to establish that: (1) a new state public assistance program, SNA, is a "successor" to AFDC/ADC (although it admittedly does not qualify for federal funding and has eligibility requirements different from either TANF/FA or AFDC/ADC); (2) the Legislature amended the Social Services Law through "Article VII" appropriation bills; (3) Social Services Law § 350 (1) (a) (although included within the FA title) applies as a general standard for determining need for public assistance; or (4) maintenance of different shelter allowances for different groups of assistance recipients violates federal and state equal protection guarantees.

While it may well be that the proposed intervenors have claims that are meritorious, they are well beyond the singular dispute already resolved by plaintiffs, namely, whether Social Services Law § 350 (1) (a) obligates the state defendant to determine shelter allowances for AFDC recipients in New York City on a reasonable basis and whether such shelter allowances were adequate. Thus, the proposed intervenors are simply not asserting the same rights, based on the same facts, as the named plaintiffs. In fact, proposed intervenors assert constitutional claims that plaintiffs had abandoned, a change in strategy evidently prompted by the denial of attorneys' fees to plaintiffs under 42 USC § 1988 (see Jiggetts, 3 AD3d at 329).

Intervention is a device to allow judicial economies, rather than a technique to permit already-litigated cases to transmute into new cases based on different facts and legal theories that were not adjudicated in the underlying action. Granting this intervention motion would require the IAS court to resolve factual and legal issues different from those in plaintiffs' pleadings and inordinately prolong this already long-running action. Thus, even if final judgment had not been entered, intervention would be inappropriate. The fact that this action has been litigated to final judgment on behalf of a clearly defined class of AFDC recipients, and the fact that the proposed intervenors are not only outside of that class but also raise unlitigated issues of fact and law, are additional factors requiring that the IAS court's

postjudgment orders be reversed. Indeed, similar proposed intervenors have been previously denied the opportunity to obtain the relief sought herein (see *Shubrick v Wing*, 303 AD2d 744 [2003], *lv dismissed* 100 NY2d 577 [2003]; *McVay v Wing*, 303 AD2d 727 [2003], *lv dismissed* 100 NY2d 577 [2003]). Contrary to the view of the dissent, the fact that families receiving AFDC were permitted to intervene throughout the pendency of this case, involving AFDC, is immaterial to application of the current proposed intervenors, who are subject to the entirely different SNA.

Notably, this is the second postjudgment appeal of orders rendered by the IAS court, the first having resulted in a unanimous reversal of an attorneys' fee award based on claims which had been abandoned by plaintiffs more than a decade ago (see *Jiggetts*, 3 AD3d at 329). Just as the plaintiffs could have chosen to litigate those claims, they could have chosen to include non-AFDC families with children when commencing litigation, or at least sought to join them prior to judgment. Strategic litigation decisions such as the abandonment of claims or party selection cannot be retroactively altered when liability has been established and the litigation passes to the damages or enforcement phase. Proposed intervenors' remedy is to bring a new action, under their own banner, where their claims can be reviewed on the merits. Notwithstanding the dissent's implications, denial of intervention will not result in evictions of the proposed intervenors, and nothing prevents the proposed intervenors from seeking interim relief should they face such a possibility. Similarly, denial of intervention will not be the last chapter in the Legislature's "long history of protecting children in the home" (*Jiggetts*, 75 NY2d at 420), but rather the legislative purpose shall continue to be honored and applied in a new action.

Accordingly, the orders of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about March 3, 2003, May 14, 2003, September 26, 2003 and December 31, 2003, which, inter alia, granted the motions of various parties to intervene as plaintiffs, preliminarily enjoined the Commissioner of the New York State Department of Social Services to pay those intervenors increased shelter allowances, and awarded intervenors-plaintiffs attorneys' fees, should be reversed, on the law and the facts, without costs, to deny the motions and to vacate the intervention, injunction and attorneys' fee orders.

ANDRIAS, J. (dissenting in part). Given the Legislature's "long

history of protecting children in the home" (*Jiggetts v Grinker*, 75 NY2d 411, 420 [1990]), the trial court providently exercised its discretion in granting intervention and interim relief in order to prevent the possible evictions of intervenors-plaintiffs, all of whom are recipients of public assistance under the Safety Net Assistance program, "a successor program" within the meaning of the judgment in this case. Accordingly, I respectfully dissent and would modify the orders appealed from only to the extent of vacating the awards of attorneys' fees and, as so modified, I would affirm.

The court properly concluded that the "adequacy" standard under Social Services Law § 350 (1) (a) applies to the Safety Net Assistance (SNA) program, such that the State's provision of shelter allowances must bear a reasonable relation to the cost of housing in New York City for all families with dependent children, including those families that receive SNA after reaching the five-year limit under the Family Assistance (FA) program. In relevant part, Social Services Law § 350 (1) (a) provides:

> "[a]llowances *shall be adequate* to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, in accordance with the provisions of [Social Services Law § 131-a ('Monthly grants and allowances of public assistance')] and other applicable provisions of law. Allowances *shall provide* for the support, maintenance and needs of one or both parents if in need, *and in the home*" (emphases added).

The Court of Appeals has stated that this section, in conjunction with Social Services Law § 344 (2) and § 350-j (3), "manifest[s] the Legislature's determination that family units should be kept together in a home-type setting and impos[es] a duty on [the State] to establish shelter allowances adequate for that purpose" (*Jiggetts v Grinker*, 75 NY2d at 417). Section 350 (1) (a)'s requirement that the State provide adequate shelter allowances to families with dependent children is not limited to any particular public assistance program under which benefits are funded.

Notably, in 1997, when the Legislature amended the Social Services Law to incorporate the 60-month federal time limitation on the receipt of what is now called "Temporary Assistance for Needy Families," it did not amend section 350 (1) (a) in any way. The Legislature presumably was aware that the Court of

Appeals, in *Jiggetts* (*supra*), had construed that statute to require adequate shelter allowances for all families with dependent children. Thus, the Legislature's failure to change the language of section 350 (1) (a) persuasively indicates that it intended to make no change in the adequacy requirement. "[T]he legislative history of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted" (*Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 157 [1987]). Further, the language of section 350 (1) (a) remained intact even as the Legislature amended the Social Services Law to incorporate the 60-month time limit (§ 350 [2]) and to provide that:

> "[a] person is eligible for safety net assistance who is financially needy . . . and . . . "resides in a family which is ineligible for [FA] or other assistance funded by the federal temporary assistance for needy families block grant because an adult in the family has exceeded the maximum durational limits on such assistance contained in [section 350 (2)]" (Social Services Law § 158 [1] [a]).

The trial court's 1997 judgment in this case also requires the provision of adequate shelter allowances for timed-out families with dependent children receiving SNA. The judgment directed the State to develop adequate shelter allowances "for the Aid to Dependent Children program *and any successor program*" (emphasis added). That judgment was affirmed by this Court (261 AD2d 144 [1999], *lv dismissed* 94 NY2d 796 [1999]), and is final. As the trial court persuasively stated in its March 3, 2003 decision,

> "[t]his language [in the 1997 judgment] meant to ensure the adequacy of shelter allowances in any future program that provides public assistance to families with dependent children. To the extent that the SNA program assists families with dependent children who reach their federal time limits, the program serves precisely that purpose. Accordingly, the 'successor program' language of the judgment covers families with dependent children who transition into the SNA program." (196 Misc 2d 678, 688 [2003].)

The record establishes that recent state appropriations bills call for adequate shelter allowances for all families with depen-

dent children, including those, such as the instant intervenors-plaintiffs, that had received interim shelter allowance relief and transferred to SNA after becoming timed out.

Since the instant recipients have demonstrated a likelihood of success on the merits (and since they and their children faced possible eviction), the granting of preliminary injunctive relief to compel payment of rent arrears and monthly allowances to cover the contract rents was proper.

Since the main issue can be resolved on nonconstitutional grounds, the trial court properly declined to address constitutional issues raised by plaintiffs (*see Matter of Beach v Shanley*, 62 NY2d 241, 254 [1984]).

The trial court properly granted the intervention motions of the various proposed intervenors-plaintiffs. Permissive intervention pursuant to CPLR 1013 rests "in the discretion of the court." "The courts are liberal in its allowance today—a relatively recent development—and distinctions between intervention of right and discretionary intervention are not sharply applied" (Siegel, NY Prac § 178, at 307 [4th ed] [citations omitted]). On such an application, the court must consider whether the proposed intervention "will unduly delay the determination of the action" or "prejudice the substantial rights of any party." (CPLR 1013.) Another factor that may be considered is "whether, if intervention is refused, the applicant is likely to bring a separate action and then move for consolidation [a favored remedy today], and how that motion would likely be disposed of. If consolidation is perceived as inevitable, the court may as well permit intervention" (Siegel, NY Prac § 182, at 312 [4th ed]).

Applying these principles to the present case, the trial court, which has had this case before it since 1987, providently exercised its discretion and permitted intervention inasmuch as in a 1991 order, the court had provided for intervention by stating that "advocacy groups . . . can apply for interim relief on behalf of AFDC families threatened with eviction by the procedure already established in this case." Moreover, the 1997 judgment implicitly allowed further intervention motions by continuing the interim relief system "until such time as a lawful shelter allowance is implemented," and that ultimate determination is still being litigated. Further, intervention by permission (CPLR 1013) was appropriate, since the claims of the proposed intervenors-plaintiffs shared with those in the main action a "common question of law or fact" (*id.*), namely whether

their shelter allowances, under a "successor program," bear a reasonable relation to the costs of housing in New York City. The Commissioner does not set forth any prejudice that would ensue by the granting of intervention.

As to the majority's emphasis on the supposed finality of the trial court's August 9, 2002 order as being somehow determinative of the propriety of permissive intervention which was not sought until two months later, an issue we point out which is not raised by the Commissioner on his appeal, lack of finality had nothing to do with the issue of attorneys' fees decided in that order, which issue had previously been severed and continued in the 1997 judgment. The Court of Appeals, in dismissing defendants' motion for leave to appeal from our unanimous affirmance of the trial court's 1997 judgment, found that our order lacked finality within the meaning of the Constitution, not because the question of attorneys' fees had been left open, but because the trial court had ordered the Commissioner of Social Services (now the Commissioner of the State Office of Temporary and Disability Assistance) to "develop . . . a proposed schedule of shelter allowances (for the Aid to Dependent Children program and any successor program) that bears a reasonable relation to the cost of housing in New York City and is designed to enable families to be kept together in a home-type setting." The judgment further provided that "until such time as a lawful shelter allowance is implemented, the Commissioner is directed . . . to provide interim relief to other eligible recipients of Aid to Dependent Children under the interim relief system established in this case." At the time intervention was sought, the Commissioner had not complied with the court's judgment and it was not until August 2003 that he adopted a new shelter allowance schedule for New York City families with children, the adequacy of which is presently sub judice before the trial court.

The orders entered on or about March 3, 2003, May 14, 2003 and September 26, 2003 must be modified to vacate their awards of attorneys' fees. In a January 8, 2004 decision, this Court (3 AD3d 326 [2004], *lv denied* 3 NY3d 603 [2004]) reversed an order of the trial court, entered August 9, 2002, which awarded plaintiffs attorneys' fees pursuant to 42 USC § 1988, on the ground that plaintiffs had abandoned their federal constitutional claims on appeal. In the aforementioned 2003 orders, the trial court awarded fees, based on its August 2002 determination. As the Commissioner points out, plaintiffs have waived and

abandoned any opposition to his claim that the fee awards were improper and should be vacated.

MAZZARELLI and NARDELLI, JJ., concur with BUCKLEY, P.J.; ANDRIAS and SAXE, JJ., dissent in part in an opinion by ANDRIAS, J.

Orders, Supreme Court, New York County, entered on or about March 3, 2003, May 14, 2003, September 26, 2003 and December 31, 2003, reversed, on the law and the facts, without costs, the motions of various parties to intervene as plaintiffs denied, and the intervention, injunction and attorneys' fee orders vacated.