OPINION OF THE COURT
Karla Moskowitz, J.
This action relates to the long-running dispute over allowances for rent subsidies between indigent families with children and the New York State Office of Temporary and Disability Assistance (OTDA or defendant), formerly the State Department of Social Services. In this case, Doris Brownley and Janee Nelson (plaintiffs), both single mothers, seek a preliminary injunction to stay their imminent eviction from homes where they have resided for many years with their children. Plaintiffs claim the current shelter allowance under Safety Net Assistance (SNA) (Social Services Law §§ 157-165) is inadequate to keep them in their homes. Plaintiffs also bring this action on behalf of all families with children in New York City who receive SNA and who: (1) are faced with eviction from their homes because of the inadequacy of the New York City shelter allowance schedule, and (2) either do not qualify for a rent supplement under Family Eviction Prevention Supplement (FEPS) program or who qualify for a supplement that is inadequate to meet their needs.
*617 Background
I. History of the Litigation over Adequate Shelter Allowances: Jiggetts
The issue of the right to adequate shelter allowances for families with children originated in the case of Jiggetts v Grinker (75 NY2d 411 [1990]), an action under the public assistance program known as Aid to Dependent Children (ADC). ADC was the State’s promulgation of the Federal Aid to Families with Dependent Children (AFDC) program. In 1990, the New York Court of Appeals determined that New York’s Social Services Law § 350 (1) (a) imposed a duty on the State Commissioner of Social Services to establish shelter allowances for ADC recipients bearing a reasonable relationship to the cost of housing in New York City. (Jiggetts v Grinker, 75 NY2d 411, 417 [1990].) In so holding, the Court of Appeals relied on the statute’s express language:
“1. (a) Allowances shall be adequate to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law. Allowances shall provide for the support, maintenance and needs of one or both parents if in need, and in the home and for the support, maintenance and needs of the other relative if he or she is without sufficient means of support, provided such parent, parents and relative are not receiving federal supplemental security income payments and/or additional state payments for which they are eligible. The social services official may, in his discretion, make the incapacitated parent the grantee of the allowance and when allowances are granted for the aid of a child or children due to the unemployment of a parent, such official may make the unemployed parent the grantee of the allowance” (Social Services Law § 350 [1] [a] [emphasis supplied]).
Section 350 (1) (a) remains unchanged today.
The Court of Appeals then remanded the case back to this court for a determination as to whether the shelter allowances that the Commissioner had established previously in 1988 were adequate under the statutory standard. (Jiggetts v Grinker.)
After a 31/2-month trial, this court found that the 1988 shelter allowances did not bear a reasonable relation to the cost of *618 housing in New York City and ordered the Commissioner to “develop and submit to the Secretary of State for promulgation by March 2, 1998 or, on application to the court, by a reasonable date thereafter, a proposed schedule of shelter allowances for [New York City participants in the AFDC program] and any successor program.” The Appellate Division affirmed this decision. (See Jiggetts v Dowling, 261 AD2d 144 [1st Dept 1999].) On October 14, 1999, the Court of Appeals dismissed the State’s motion for leave to appeal. (Jiggetts v Dowling, 94 NY2d 796 [1999].)
II. The Current Statutory Framework
In 1996, Congress replaced, the AFDC program with a five-year time-limited program known as Temporary Assistance to Needy Families (TANF). In 1997, New York State replaced the ADC program with the Family Assistance (FA) program. (See Social Services Law §§ 343-360.) This new state-federal statutory scheme prohibits receipt of funds for more than 60 months during a recipient’s lifetime, regardless of need. (See 42 USC § 608 [a] [7] [A].)
For families receiving FA who reach the federal five-year time limit, the New York State Legislature enacted the SNA program. (Social Services Law §§ 157-165.) When a family receiving FA reaches the federal five-year time limit, the family interviews with the requisite local agency. If the family wishes to continue receiving assistance, that agency transfers that family to the SNA program. Under Social Services Law § 157 (1), SNA means:
“allowances pursuant to section one hundred thirty-one-a for all support, maintenance and need, and costs of suitable training in a trade to enable a person to become self-supporting, furnished eligible needy persons in accordance with applicable provisions of law, ... to persons or their dependents in their abode or habitation whenever possible . . . but does not include . . . family assistance or medical assistance for needy persons granted under titles ten and eleven, respectively, or aid. to persons receiving federal supplemental security income payments and/or additional state payments.”
Pursuant to Social Services Law § 159, “[s]afety net assistance shall be provided in amounts determined in accordance with article five and, where applicable, section one hundred seventeen . . . .” The amounts are the same for those families who receive shelter payments pursuant to Social Services Law § 350.
*619 III. The Current System
A. Shelter Allowance under SNA
SNA recipients receive shelter allowances up to specific maximum amounts depending on the local social services district. In November 2003, the State adopted the following new shelter allowance schedule for families in New York City with children:
Family Size: 1 2 3 4 5 6 7+
Maximum Rent: $277 $283 $400 $450 $501 $524 $546
(Verified complaint 1Í 43; see also NY Reg, Feb. 26, 2003, at 13, adopted NY Reg, Aug. 6, 2003, at 36.) Plaintiffs challenge these shelter allowances.
B. Interim Relief System in the Jiggetts Case
Because this court had found that the 1988 shelter allowances did not bear a reasonable relationship to housing costs in New York City and, in order to avoid the need for repeated intervention motions in this action, this court directed the parties to operate an interim relief system for families with children who face eviction solely because of the inadequacy of the shelter allowance schedule (Jiggetts interim relief). Families with children are eligible for Jiggetts interim relief only if they are facing eviction in housing court based on accrued arrears. According to plaintiffs, as of April 30, 2005, over 12,000 families receive monthly Jiggetts interim relief payments. (Verified complaint If 51.) Until May 1, 2005, the State routinely approved requests for interim relief up to the following amounts:
Household Size: 1 2 3 4 5 6 7
Allowance: $450 $550 $650 $700 $725 $750 $775
(Verified complaint 11 52.)
The Jiggetts judgment requires the State to continue to provide interim relief until the State complies with its obligation to promulgate an adequate shelter allowance. In October 2003, this court ordered the State to process interim relief applications for FA and SNA recipients until the court decided whether the new shelter allowance schedule complied with the statutory adequacy standard. However, as explained more fully infra, in July 2005, the Appellate Division, First Department, held that SNA recipients could not challenge the adequacy of their shelter allowances within the context of the Jiggetts case.
*620 C. Family Eviction Prevention Supplement Program
The state regulations that created the current shelter allowance, that were effective November 1, 2003, also provide for local service districts to grant shelter allowance supplements while court cases challenging the adequacy of those shelter allowances for families with minor children are pending. As a result, on December 9, 2004, New York State approved a New York City plan to supplement the current shelter allowance pursuant to 18 NYCRR 352.3 (a) (3) called the Family Eviction Prevention Supplement program. (Verified complaint 1i 57.)
The supplements increase Jiggetts interim relief the State previously provided, absent court involvement, as follows:
Household Size: 1 2 3 4 5 6 7
Allowance: $650 $750 $850 $900 $1,000 $1,100 $1,200
(Verified complaint 11 58.)
On May 2, 2005, the State issued revised clarifications and a revised application for FEPS. These revisions contain many conditions and qualifications for receipt of FEPS. (Verified complaint 1i 63.) For example, neither family members who are not on public assistance nor roommates can contribute more than a certain amount toward the rent, regardless of their source of income. FEPS supplements cannot be used in conjunction with other rent subsidies such as Administration for Children’s Services (ACS) subsidies. In addition, the FEPS recipient must be the tenant of record. FEPS, like Jiggetts interim relief, only applies to families who are in imminent danger of eviction. In their complaint, plaintiffs challenge the adequacy of FEPS and these various FEPS limitations.
IV Further Procedural Developments
On March 3, 2003, this court issued a decision and order holding that families with minor children are entitled to an adequate shelter allowance after they transition from the FA to the SNA program. (Jiggetts v Dowling, 196 Misc 2d 678 [Sup Ct, NY County 2003] [the March 3, 2003 Jiggetts decision].) Shortly after I issued the March 3, 2003 Jiggetts decision, the Appellate Division, Second Department, issued two decisions: McVay v Wing (303 AD2d 727 [2d Dept 2003]) and Shubrick v Wing (303 AD2d 744 [2d Dept 2003]). The Appellate Division, Second Department, held that section 350 (1) (a) does not apply to families with children in the SNA program:
“Now ineligible to receive Family Assistance, *621 [plaintiff] receives Safety Net Assistance instead. Under such a circumstance, [plaintiff] may not challenge the adequacy of the housing allowance schedules, or the housing allowance that she receives (see Social Services Law § 159 [1] [b] [i]; Deleo v Kaladjian, 215 AD2d 520, 521 [1995]; Matter of Gautam v Perales, 179 AD2d 509, 510 [1992]; cf. Matter of Bernstein v Toia, 43 NY2d 437, 440 [1977]).” (McVay v Wing, 303 AD2d at 727.)
Shubrick followed McVay.
On July 21, 2005, the Appellate Division, First Department, overturned that part of the March 3, 2003 decision that had granted standing to SNA proposed intervenors in Jiggetts v Dowling because whether section 350 (1) (a) applies to SNA recipients was “beyond the singular dispute already resolved by plaintiffs, namely, whether Social Services Law § 350 (1) (a) obligates the state ... to determine shelter allowances for AFDC recipients ... on a reasonable basis and whether such shelter allowances are adequate.” (Jiggetts v Dowling, 21 AD3d 178, 181 [1st Dept 2005].) That Court suggested the proposed intervenors who are SNA recipients bring a new action should they face the possibility of eviction. (Id.) Accordingly, on August 9, 2005, these plaintiffs brought this action.
At oral argument on October 18, 2005, the court denied defendant landlord Denyse Roberts’ cross motion to dismiss for improper venue. The court also denied plaintiffs’ motion to consolidate this action with Jiggetts v Dowling. The court took the remainder of plaintiffs’ motion and defendant’s cross motion on submission. After considering all the papers the parties submitted on this motion and the oral argument, the court denies defendant’s cross motion to dismiss and grants plaintiffs’ motion for temporary injunctive relief.
Plaintiffs’ Factual Background
Both plaintiffs are ineligible for FEPS due to that program’s restrictions.
Plaintiff Doris Brownley
Doris Brownley lives in Brooklyn, New York, with her nine-year-old son. They have lived in their one-bedroom, rent-stabilized apartment for approximately four years. The rent is $879.75 per month. Ms. Brownley’s most recent lease started on May 1, 2005 and will expire on April 30, 2006.
Ms. Brownley received public assistance until the winter of 2002-2003 when she found a job with the Visiting Nurses Ser *622 vices of New York. She also began to attend college on a part-time basis to obtain a degree in nursing. In September 2004, Ms. Brownley tripped and fell on her way to work, necessitating surgery. During her recuperation, the Visiting Nurses Services of New York replaced her with another employee. Ms. Brownley then reapplied for welfare.
After she lost her job, Ms. Brownley fell in arrears because she was unable to pay the full rent amount from the public assistance that she received. From June 2004 through July 2005, the New York City Human Resources Administration (HRA) erroneously failed to pay $238 per month to Ms. Brownley’s landlord for the family’s monthly shelter allowance. The ACS issued $6,000 in partial payment of arrears to her landlord. Since April 2005, ACS has been issuing a $300 subsidy each month directly to Ms. Brownley’s landlord toward her rent, reducing her monthly rent to $579.75. In February 2005, Ms. Brownley’s landlord commenced a nonpayment proceeding against her, seeking the rent arrears. The housing court granted her several extensions to pay the rent arrears. On April 7, 2005, Ms. Brownley appeared in housing court and signed a stipulation agreeing to pay a judgment of $5,050 by May 7, 2005.
FEPS Policy Clarification 5-2-05 states that “[t]he apartment cost cannot exceed the FEPS limit for all household members as if all members were on P[ublic] Assistance]” (FEPS Policy Clarification 5-2-05, affirmation of Susan Bahn, exhibit A). This restriction applies to Ms. Brownley. On July 6, 2005, the Legal Aid Society filed a FEPS application on Ms. Brownley’s behalf. The State has denied Ms. Brownley’s application because: (1) under the rent cap rule, her contract rent cannot exceed $850 per month, and (2) she already receives a $300 ACS rental subsidy.
At present, Ms. Brownley and her son receive SNA. They receive approximately $218 per month in cash for food, utilities and other expenses and $240 per month in food stamps. Ms. Brownley is unable to find another one-bedroom apartment as inexpensive as hers. If the landlord evicts Ms. Brownley, there is a risk that her son will be placed in foster care. Ms. Brownley is also carrying a high-risk pregnancy.
Plaintiff Janee Nelson
Plaintiff Janee Nelson lives in Bronx, New York, with her four-year-old son, her stepfather and her three stepsisters in a three-bedroom, rent-stabilized apartment. The current monthly rent is $1,401. The lease commenced on April 21, 2004 and will *623 expire on April 30, 2006. The lease is in her stepfather Joseph Holmes’ name. Prior to December 2004, Ms. Nelson worked for a telemarketing company. The company later laid off Ms. Nelson due to downsizing. At present, she attends Interboro College, is studying accounting and learning to be an electrician.
Ms. Nelson and her son currently receive approximately $218 per month in cash, a shelter allowance of $238 per month and food stamps of $274 per month from public assistance. Ms. Nelson’s stepfather, Mr. Holmes, works as a food service worker in a veteran’s hospital and earns approximately $2,000 per month. Mr. Holmes contributes approximately $700 per month to the landlord from his earnings. Ms. Nelson’s three younger stepsisters were in foster care from 1999 to 2004 and ACS issues a $300 subsidy each month directly to the landlord.
The balance of Ms. Nelson’s rent after the subtraction of the $300 ACS subsidy and Mr. Holmes’ contribution of $700 is $401 per month. In March 2004, Ms. Nelson’s landlord commenced a nonpayment proceeding against her for rent arrears. The housing court granted Ms. Nelson several extensions to pay the arrears. On May 26, Ms. Nelson appeared in housing court and signed a stipulation to pay $1,000 by May 31, 2005 and $3,066.50 by June 10, 2005. Ms. Nelson paid $1,000 to her landlord on the day she signed the agreement.
On June 3, 2005, the Legal Aid Society submitted a FEPS application on Ms. Nelson’s behalf. The State denied the application because: (1) under the rent cap rule, the rent is higher than the State will approve for her family size, (2) she receives an ACS subsidy, and (3) she is not the tenant of record for her apartment. If the landlord evicts Ms. Nelson, there is a risk that her son and her three stepsisters will be placed in foster care.
Discussion
I. The State’s Motion to Dismiss
Defendant cross-moves to dismiss plaintiffs’ claims arguing that: (1) plaintiffs have no standing to raise their statutory claims; (2) plaintiffs’ constitutional claims are without merit; (3) neither plaintiff has requested an administrative fair hearing regarding the denial of their respective applications for additional shelter payments under HRA’s FEPS program; and (4) plaintiffs have failed to name a necessary party.
A. Standing
Defendant argues that, because plaintiffs are SNA recipients and do not receive public assistance pursuant to *624 Social Services Law § 350, the “adequacy” requirement from section 350 does not apply. Defendant relies upon the recent First Department ruling in Jiggetts v Dowling and the Second Department decisions in Shubrick and McVay.
Analysis starts with the language of the statute. (Jiggetts v Grinker, 75 NY2d 411, 417 [1990].) If clear and unambiguous, the court must interpret the statute as it is written. (Apex Air Frgt. v O’Cleireacain, 210 AD2d 7, 8 [1st Dept 1994], citing Matter of Country-Wide Brokerage v Harnett, 58 AD2d 517, 518 [1st Dept 1977].) Social Services Law § 159 (1) unambiguously states that “[s]afety net assistance shall be . . . determined in accordance with article five” (emphasis added). Social Services Law § 350 is part of Social Services Law article 5. It follows that Social Services Law § 159 incorporates the adequacy requirement by reference.
While the Second Department held in McVay and Shubrick that a recipient of SNA cannot challenge the adequacy of housing allowance schedules, that court did not have occasion to consider whether Social Services Law § 159 incorporates the adequacy requirement because the parties in those cases did not make that argument. (See brief for plaintiff-respondent, McVay v Wing, App Div No. 2002-02453, dated Oct. 11, 2002; brief for plaintiff-respondent, Shubrick v Wing, App Div No. 2002-02455, dated Oct. 11, 2002.) In the absence of an indication that the Second Department considered and rejected this argument, the Shubrick and McVay decisions do not bind this court. In addition, the Appellate Division, First Department, left open the question of standing for SNA recipients when it suggested that SNA recipients should bring a separate lawsuit. (Jiggetts v Dowling, 21 AD3d 178, 186 [1st Dept 2005].)
Because this court reads the language of Social Services Law § 159 to include the adequacy requirement in Social Services Law § 350, plaintiffs have standing to challenge the adequacy of the shelter allowances they receive under SNA. Accordingly, the court denies that part of defendant’s cross motion to dismiss for lack of standing.
In addition, a plain reading of section 350 (1) (a), including what that statute does not say, favors plaintiffs’ position. Section 350 (1) (a) makes no mention of limiting its applicability to recipients of FA, or even to families who have received cash assistance for less than five years. Indeed, the statute does not even mention FA. Surely the Legislature could have expressly limited section 350 (1) (a) to FA recipients had it meant to do so. The Legislature had ample opportunity in 1997 when it *625 undertook a comprehensive amendment to the State’s welfare laws. At that time, the Legislature took care to insert references to “family assistance” where it wanted those words to appear. (See, e.g., Social Services Law § 348 [1] [“(application for family assistance shall be made to the appropriate social services district”]; § 349 [A] [“(f)amily assistance shall be given to a pregnant individual, a parent or other relative as herein specified for the benefit of a child under eighteen . . .”]; see also § 352-a [1]; § 353 [a].)
In chapter 436 of the Laws of 1997 (§ 37), the Legislature looked directly at section 350 of the Social Services Law and repealed some and amended other parts of that section, including paragraph (c) of subdivision (1). (L 1997, ch 436, § 37.) Thus, the Legislature could have amended section 350 (1) (a). It did not. Accordingly, it is clear that the Legislature intended section 350 (1) (a) to continue to apply as it had before.
Now for what the statute does state. By its plain language, section 350 (1) (a) applies to families with minor children. Section 350 (1) (a) requires that shelter allowances be adequate to enable parents “to bring up the child properly, having regard for the physical, mental and moral well-being of such child . . . in the home” (emphasis added). The statute contains no restriction on the funding source. Thus, the allowances that must be “adequate” under section 350 (1) (a) include shelter allowance payments for families with minor children under whichever program those allowances are paid.
The history and purpose of section 350 (1) (a) reinforces this conclusion. As the Court of Appeals recognized in Jiggetts v Grinker (75 NY2d 411, 420 [1990]), “New York has a long history of protecting children in the home.” Since 1915, the Legislature has directed localities to grant allowances sufficient to ensure that “children may be suitably cared for in their homes.” (Id.) Indeed, the Court of Appeals noted that “[t]he legislative commission that drafted the 1915 act explained that its principal purpose was to ensure that children be raised in the home.” (Id.) Had the Legislature intended a drastic change to its 80-year-old mandate of requiring that allowances for families with children be adequate to raise children “in the home” surely it would have said so specifically.
This reading is consistent with this court’s language in Jiggetts making the judgment applicable to “any successor program” to the Aid to Dependent Children program (Jiggetts v Dowling, 196 Misc 2d at 681). This language meant to ensure *626 the adequacy of shelter allowances in any future program that provides public assistance to families with dependent children. To the extent that the SNA program assists families with dependent children who reach their federal time limits, the program serves precisely that purpose. Accordingly, the “successor program” language of the judgment covers families with dependent children who transition into the SNA program.
B. Exhaustion of Administrative Remedies
Defendant argues that the court should dismiss plaintiffs’ claims because plaintiffs failed to first exhaust their administrative remedies. However, a party need not exhaust administrative remedies where to do so would be futile. (G. Heileman Brewing Co. v New York State Liq. Auth., 237 AD2d 203, 203 [1st Dept 1997]; Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 87 NY2d 136, 140 [1995].) There is also no need to exhaust administrative remedies where plaintiffs would suffer irreparable harm. (Apex Air Frgt., 210 AD2d at 8.)
Here, the State has already denied plaintiffs’ qualification under the FEPS program and therefore administrative remedies would be futile. Minor children live in plaintiffs’ homes and both may suffer homelessness because of pending nonpayment summary proceedings in housing court. Thus, irreparable harm would result from plaintiffs’ evictions in the absence of prompt judicial intervention. Accordingly, plaintiffs need not exhaust their administrative remedies before they seek redress in court.
C. Naming a Necessary Party
Defendant argues that the court should dismiss plaintiffs’ claims for failure to name HRA as a necessary party pursuant to CPLR 1001 (a). However, the First Department has already held in the Jiggetts litigation that the “City Commissioner ‘is neither a necessary nor an appropriate party.’ ” (Jiggetts v Grinker, 148 AD2d 1, 21 [1st Dept 1989], revd on other grounds 75 NY2d 411 [1990] [citations omitted].) “The City Commissioner is commanded by statute to follow such standards [set forth by the State Commissioner] and may not substitute his judgment for that of the State Commissioner.” (Id., citing Matter of Beaudoin v Toia, 45 NY2d 343, 347 [1978].) The ultimate responsibility for establishing and administering an adequate shelter allowance for public assistance recipients rests with the State.
Contrary to defendants’ contention, nonjoinder will not prejudice HRA. Plaintiffs assert no legal claims against HRA and *627 HRA has declined to intervene voluntarily in the action. (Affirmation of Susan Bahn, dated Oct. 17, 2005, exhibit C.) Accordingly, the court denies defendant’s cross motion to dismiss for failure to name a necessary party.
D. Constitutional Claims
In light of this court’s determination, there is no need to address the constitutional arguments the parties have raised. (See Matter of Beach v Shanley, 62 NY2d 241, 254 [1984] [courts should not decide constitutional questions when the issue is determinable on nonconstitutional grounds].)
II. Plaintiffs’ Entitlement to Injunctive Relief
To demonstrate entitlement to injunctive relief, plaintiffs must show (1) a likelihood of success on the merits, (2) irreparable injury, and (3) a balance of the equities in their favor. (Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]; Matter of Lamboy v Gross, 129 Misc 2d 564 [Sup Ct, NY County 1985], affd 126 AD2d 265 [1st Dept 1987]; Tucker v Toia, 54 AD2d 322 [4th Dept 1976].) As stated earlier, plaintiffs have demonstrated a likelihood of success on the issue that the SNA program incorporates the adequacy requirement and therefore plaintiffs have a right to challenge the adequacy of their shelter allowances. If this court does not grant a preliminary injunction, plaintiffs will suffer irreparable harm in the truest sense — they and their young children will face eviction from their homes and likely homelessness. Further, plaintiffs face the risk of losing their children to foster care because of an inability to secure alternative affordable housing. Obviously then, the balance of the equities favors plaintiffs over the State that will suffer only monetary loss should the injunction prove improvident.
Defendant argues that a preliminary injunction would alter the status quo. This is not the case. A preliminary injunction would enable plaintiffs and their children to remain in their current homes without the immediate threat of eviction. Thus, plaintiffs have successfully satisfied the test for the court to grant interim injunctive relief.
Accordingly, the court grants the motion of plaintiffs Doris Brownley and Janee Nelson for a preliminary injunction and denies the cross motion to dismiss of defendant Robert Doar, as Commissioner of the New York State Office of Temporary and Disability Assistance.
[Portions of opinion omitted for purposes of publication.]