[903 NE2d 1155, 875 NYS2d 835]

DORIS BROWNLEY et al., on Behalf of Themselves and Their Minor Children and Others Similarly Situated, Appellants, v ROBERT DOAR, as Commissioner of the New York State Office of Temporary and Disability Assistance, Respondent, et al., Defendants.

Argued January 7, 2009; decided February 17, 2009

**POINTS OF COUNSEL**

*Legal Aid Society,* New York City (*Scott A. Rosenberg, Steven Banks, Susan C. Bahn, Nada A. Geha, Gretchen A. Gonzalez, Young W. Lee, Sarah Mathison, Jack Newton, Jennifer Quintana* and *Douglass J. Seidman* of counsel), *Weil, Gotshal & Manges LLP* (*Scott Martin* and *Robert T. Polemeni* of counsel) for appellants. I. Social Services Law § 350 (1) (a) mandates the provision of an adequate shelter allowance to families with minor children who transition from the Family Assistance program to the Safety Net Assistance program after five years. (*Jiggetts v Grinker,* 75 NY2d 411; *Matter of United Univ. Professions v State of New York,* 36 AD3d 297; *Matter of Delese v Tax Appeals Trib. of State of N.Y.,* 3 AD3d 612, 2 NY3d 793; *Matter of Thomas v Bethlehem Steel Corp.,* 95 AD2d 118, 63 NY2d 150; *People v Bolden,* 81 NY2d 146; *Pierre v Providence Washington Ins. Co.,* 99 NY2d 222; *Howell v Mills,* 53 NY 322; *People v White,* 73 NY2d 468; *People v Finnegan,* 85 NY2d 53; *People ex rel. Harris v Sullivan,* 74 NY2d 305.) II. A denial of assistance to families with children who reach the five-year time limit would violate article XVII of the New York State Constitution. (*Tucker v Toia,* 43 NY2d 1; *Matter of Aliessa v Novello,* 96 NY2d 418; *Jiggetts v Grinker,* 75 NY2d 411; *Matter of Lee v Smith,* 43 NY2d 453; *McCain v Koch,* 117 AD2d 198, 70 NY2d 109.)

*Andrew M. Cuomo, Attorney General,* New York City (*Oren L. Zeve, Barbara D. Underwood* and *Peter Karanjia* of counsel), for respondent. I. Social Services Law § 350 (1) (a) applies only to the Family Assistance program and not to the Safety Net Assistance program. (*McVay v Wing,* 303 AD2d 727; *Jiggetts v Grinker,* 75 NY2d 411; *Matter of Robert J.,* 2 NY3d 339; *Pajak v Pajak,* 56 NY2d 394; *Matter of Anonymous,* 40 NY2d 96; *Castro v United Container Mach. Group,* 96 NY2d 398; *Colon v Aetna Cas. & Sur. Co.,* 48 NY2d 570; *Matter of Gautam v Perales,* 179 AD2d 509; *Deleo v Kaladjian,* 215 AD2d 520; *Hedgepeth v Wing,* 29 AD3d 632.) II. The New York Constitution does not require that aid to the needy, provided pursuant to article XVII, must be "adequate." (*McVay v Wing,* 303 AD2d 727; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of E.S. v P.D.,* 8 NY3d 150; *Hope v Perales,* 83 NY2d 563; *Matter of Aliessa v Novello,* 96 NY2d 418; *Lovelace v Gross,* 80 NY2d 419; *Matter of Bernstein v Toia,* 43 NY2d 437; *Matter of Tucker v Toia,* 43 NY2d 1; *Matter of Lee v Smith,* 43 NY2d 453; *Campaign for Fiscal Equity, Inc. v State of New York,* 8 NY3d 14.)

*National Center for Law and Economic Justice, Inc.,* New York City (*Henry A. Freedman* and *Lynn D. Lu* of counsel), for Community Service Society of New York and others, amici curiae. Appellants are entitled to challenge the adequacy of their shelter allowances because New York Constitution article XVII requires shelter allowances to be sufficient to permit indigent families to care for their minor children in their own homes instead of facing eviction and homelessness, regardless of the funding source of the assistance. (*Tucker v Toia,* 43 NY2d 1; *Matter of Aliessa v Novello,* 96 NY2d 418; *McCain v Koch,* 117 AD2d 198, 70 NY2d 109; *Matter of Bernstein v Toia,* 43 NY2d 437; *Matter of Brown v Wing,* 170 Misc 2d 554, 241 AD2d 956; *Jiggetts v Grinker,* 75 NY2d 411.)

**OPINION OF THE COURT**

Graffeo, J.

In New York, eligible individuals with dependent children may receive public assistance for housing costs for up to 60 months under the Family Assistance (FA) program, which is jointly funded by the state and federal governments. Social Services Law § 350 specifies that aid provided under the FA program must be "adequate" to provide the family with a home (*see Jiggetts v Grinker,* 75 NY2d 411, 421 [1990]). Upon the expiration of the 60-month benefit period, a family may enroll

in the Safety Net Assistance (SNA) program, which is funded solely by the State, has no restriction on the period of eligibility and does not limit benefits to persons with children. The issue in this case is whether the adequacy requirement of Social Services Law § 350 applies to the SNA program. We hold that it does not.

I

Before the 20th century, destitute individuals and families often sought housing in institutional "almshouses." Eventually, societal views changed, prompting New York to adopt the Child Welfare Act of 1915 (L 1915, ch 228). It authorized County Boards of Child Welfare to give monetary allowances to widowed mothers with children under the age of 16 "in order that such children may be suitably cared for in their homes" rather than in institutional settings (*Jiggetts v Grinker*, 75 NY2d at 420). In the midst of the Great Depression, this program was expanded to extend housing assistance to eligible indigent individuals and families with minor children (rather than only widows) and was referred to as the "Home Relief" program (L 1929, ch 565). As before, its purpose was to allow impoverished persons to remain in homes instead of institutional settings (*see* L 1929, ch 565, § 77; Bond, Social Welfare Legislation, 1946 NY Legis Ann, at 284-287).

In 1935, Congress passed the Social Security Act and established the Aid to Families with Dependent Children (AFDC) program as a joint federal-state system to provide support to needy families. Under the AFDC program, states determined the level of public assistance needed by parents and their children, and the federal government reimbursed 50% of those costs. New York enacted its companion Aid to Dependent Children (ADC) program in compliance with AFDC, containing two main components—(1) basic grants for food and other necessities, and (2) shelter grants.

In developing the ADC program in New York, the Legislature specified the dollar amounts of monthly assistance payable to recipients of basic grants, but directed that the amount for shelter allowances be set administratively to reflect local rent levels in the various regions of the state (Social Services Law § 131-a [1]; 18 NYCRR 352.3). The former Department of Social Services therefore promulgated regulations that set forth the maximum shelter allowances based on the district or region where recipients lived. Those assistance levels were subject to

the requirement in former Public Welfare Law § 181 (4) that "[a]llowances shall be adequate to enable the mother or relative to bring up the child or children properly, having regard for the physical, mental and moral well-being of such child or children" (L 1937, ch 15, at 26). In addition to the creation of the ADC program, the Legislature continued Home Relief as a separate program, which was not supported with federal money.

In 1940, the Public Welfare Law was renamed the Social Welfare Law (L 1940, ch 619, § 2). The language in former Public Welfare Law § 181 (4) requiring that ADC allowances be "adequate" was recodified in Social Welfare Law § 350 (1) (a) and it has remained substantively unchanged through today (see Social Services Law § 350 [1] [a]).

This Court considered claims asserting a right to "adequate" ADC shelter allowances under Social Services Law § 350 in *Jiggetts v Grinker* (75 NY2d 411 [1990]). The plaintiffs were ADC recipients residing in New York City whose actual shelter costs exceeded the maximum payable to them pursuant to 1988 schedules prepared by the New York Department of Social Services. Social Services Law § 350 (1) (a) provided that:

> "Allowances shall be adequate to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law. Allowances shall provide for the support, maintenance and needs of one or both parents if in need, and in the home."

Noting that New York "has a long history of protecting children in the home" (75 NY2d at 420), we concluded that the adequacy requirement of section 350 imposed a statutory duty on the Commissioner of the New York Department of Social Services to establish ADC shelter allowances that bore a reasonable relation to the cost of housing in New York City (see id. at 421). To achieve that objective, the case was remitted for a trial to determine whether the ADC shelter allowances established by the Department of Social Services were adequate to meet the housing needs of poor families residing in New York City.[1]

---

**1.** After the trial, Supreme Court held that the State's 1988 shelter allowances were inadequate, created an interim relief schedule and ordered the

During the course of the *Jiggetts* litigation, Congress substantially reformed the federal-state AFDC program, enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Pub L 104-193, 110 US Stat 2105 [1996], codified at 42 USC § 601 *et seq.*), which was intended to "promot[e] the fundamental values of work, responsibility, and family" (Statement by President William J. Clinton Upon Signing HR 3734, 32 Wkly Compilation Presidential Docs 1487 [Aug. 26, 1996], reprinted in 1996 US Code Cong & Admin News, at 2891). This legislation replaced AFDC with a new program—the Temporary Assistance for Needy Families (TANF) program (42 USC § 601 *et seq.*). TANF restricted the receipt of public assistance to a maximum of 60 months during a recipient's lifetime, regardless of subsequent need (*see* 42 USC § 608 [a] [7] [A]).

The following year, New York complied with this congressional mandate and substituted its ADC program with a Family Assistance program for families with dependent minor children (*see* L 1997, ch 436, part B; Social Services Law § 343 *et seq.*). In furtherance of the State's policy aim of continuing support to families and individuals after expiration of the federal 60-month benefit period, the New York Legislature enacted a separate and distinct, state-funded Safety Net Assistance program (*see* Social Services Law § 157 *et seq.*). SNA replaced the Home Relief component and was made available to all needy individuals, not just families with children (*see generally Matter of Rodriguez v Wing*, 94 NY2d 192, 196-197 [1999]). Under SNA, an individual or family may apply to a local public assistance agency to receive continued benefits after FA eligibility ends. Pursuant to Social Services Law § 159 (1), "[s]afety net assistance shall be provided in amounts determined in accordance with article five and, where applicable, section one hundred seventeen" of the Social Services Law. As currently set forth in regulations promulgated by defendant Commissioner of the New York Office of Temporary and Disability Assistance (OTDA) (the successor agency to the Department of Social Services), the amount of the shelter allowance established under SNA is identical to the aid provided

---

Commissioner to develop and submit a proposed schedule of shelter allowances for New York City participants in the AFDC program. The Appellate Division affirmed (*see Jiggetts v Dowling*, 261 AD2d 144 [1st Dept 1999]) and the State's motion for leave to appeal was dismissed (94 NY2d 796 [1999]).

by the FA program (*see* 18 NYCRR 352.3).[2] Thus, when a person transitions from FA into SNA, the level of shelter assistance does not change.

In 2002, State Supreme Court entered a judgment in the *Jiggetts* litigation and the shelter allowance schedule for FA was adjusted upward by the State in accordance with the court's order. After entry of the judgment, families that received benefits under SNA moved to intervene in the *Jiggetts* action, alleging that Social Services Law § 350 (1) required that SNA shelter allowances be based on the same adequacy standard that applies to FA benefits. Supreme Court granted the motions to intervene and permitted plaintiffs' landlords to join the action as additional defendants. The court concluded that families with minor children were entitled to SNA shelter allowances at the same level that corresponded to FA benefits (*see Jiggetts v Dowling*, 196 Misc 2d 678 [Sup Ct, NY County 2003]). The court therefore issued a preliminary injunction requiring the Commissioner of the New York State Department of Social Services to pay increased shelter allowances under the SNA program for New York City housing.

In separate litigation, the Appellate Division, Second Department, determined that recipients of SNA shelter allowances did not have standing to challenge the adequacy of the housing allowance schedules or the benefits they received (*see McVay v Wing*, 303 AD2d 727 [2d Dept 2003], *lv dismissed* 100 NY2d 577 [2003]; *Shubrick v Wing*, 303 AD2d 744 [2d Dept 2003], *lv dismissed* 100 NY2d 577 [2003]). Two years later, the Appellate Division, First Department, reversed Supreme Court's order in *Jiggetts*, agreeing with the *McVay* court that intervention was improper because the plaintiffs' benefits were provided by the SNA program, whereas the plaintiffs in the *Jiggetts* action received assistance under the AFDC/FA programs (*see Jiggetts v Dowling*, 21 AD3d 178 [1st Dept 2005], *lv dismissed* 6 NY3d 807 [2006]). The First Department suggested that plaintiffs raise the issue regarding the applicability of the section 350 adequacy requirement to the SNA program in their own lawsuit. Hence, the case now before us was commenced.

---

**2.** In addition to a shelter allowance, SNA also includes a basic grant, a home energy allowance, a supplemental home energy allowance and a fuel allowance if heat is not included in rent (*see* Temporary Assistance Source Book, at 2-4, http://www.otda.state.ny.us/main/ta/TASB.pdf [New York State Office of Temporary and Disability Assistance, Dec. 28, 2007, accessed Jan. 20, 2009]).

## II .

Plaintiffs Doris Brownley and Janee Nelson are residents of New York City who have dependent children and receive benefits from the SNA program. They allege that the payments they obtain from SNA are less than the amount of their actual rents and that the stipends are inadequate to meet their housing needs. As a result, their landlords have commenced nonpayment proceedings against them. Plaintiffs brought this action on behalf of themselves and all families with children in New York City who receive SNA benefits and who are threatened with eviction because of the alleged inadequacy of SNA allowances.[3] They seek monetary and injunctive relief that would prevent plaintiffs from being evicted from their homes. According to the complaint, current SNA shelter allowances violate both section 350 of the Social Services Law and article XVII of the State Constitution.

The Commissioner of OTDA moved to dismiss the statutory cause of action, arguing that plaintiffs lacked standing to raise the adequacy claim because section 350 is not pertinent to the SNA program. Supreme Court denied the motion and granted plaintiffs' request for a preliminary injunction, concluding that the adequacy requirement of section 350 applied to the SNA benefits under Social Services Law § 159 because that statute incorporates the provisions of article 5 of the Social Services Law and section 350 is included in article 5 (11 Misc 3d 615 [2006]). In another case, the Second Department subsequently reaffirmed its holding that only FA recipients, and not SNA enrollees, have standing to challenge the adequacy of shelter allowances under Social Services Law § 350 (*see Hedgepeth v Wing*, 29 AD3d 632 [2d Dept 2006]), so Supreme Court dismissed this action (2006 NY Slip Op 30540[U]). The Appellate Division affirmed, holding that section 350's adequacy requirement does not encompass the SNA program (44 AD3d 313 [2007]). We granted leave to appeal (10 NY3d 848 [2008]) and now agree with that conclusion.

## III

Plaintiffs contend that the adequacy requirement applies to the SNA program because Social Services Law § 159 provides

---

**3.** Although there is a supplemental housing allowance program in New York City called the Family Eviction Prevention Supplement (FEPS) that provides money in addition to SNA assistance, plaintiffs are not eligible to participate in that program.

that SNA benefits must be calculated in accordance with the provisions of article 5 of the Social Services Law, of which section 350 is a part. In our view, this argument fails to account for the fundamental differences between the FA and SNA programs (*see generally Matter of Robert J.*, 2 NY3d 339, 345 [2004]). Family Assistance is part of the Aid to Dependent Children program delineated in title 10 of article 5 of the Social Services Law and is "the primary program in the State for ensuring the welfare of needy children" (*Jiggetts v Grinker*, 75 NY2d at 420). As the program's name emphasizes, the purpose of ADC/FA is "to enable the father, mother or other relative" to raise a needy "child properly, having regard for the physical, mental and moral well-being of such child" (Social Services Law § 350 [1] [a]). In light of this focus on providing a sufficient upbringing to children of impoverished individuals, we have recognized that it was "reasonable" for the Legislature to codify a heightened "adequacy" standard in section 350 in order to promote "special protection to ensure the health and well-being of children in a program that is dedicated to protecting the welfare of children deprived of parental support" (*Jiggetts*, 75 NY2d at 420).

In contrast, Safety Net Assistance appears in title 3 of article 5, entitled "Home Relief." It places no restriction on how long a person is eligible to receive SNA benefits and applies more broadly as it "is not contingent upon the presence of children in the household and it is not specifically designed to deal with their needs" (75 NY2d at 420). Consequently, we impliedly recognized in *Jiggetts* that the "special protection" of section 350's adequacy requirement should not apply outside the context of ADC/Family Assistance (*id.*). Indeed, neither section 159, nor any other provision in title 3 of article 5 of the Social Services Law, clearly indicates that the Legislature intended to incorporate the adequacy requirement into the SNA program. Moreover, acceptance of plaintiffs' argument would allow individuals with children in SNA to invoke the adequacy standard but preclude persons without children from doing so—a conclusion that finds no support in the construction of Social Services Law article 5 or its legislative history.

This issue was addressed by the courts before the 1997 statutory amendments that created the FA and SNA programs. Under the preexisting legislative scheme, it had been determined that section 350 did not apply to the Home Relief program (which was the predecessor to SNA) (*see Matter of Gautam v Perales*, 179 AD2d 509, 511 [1st Dept 1992], *lv denied* 80 NY2d

758 [1992]; *Deleo v Kaladjian*, 215 AD2d 520, 521 [2d Dept 1995]). Presumably, the Legislature was aware of those interpretations of the Social Services Law and could have adopted a provision parallel to section 350 if it intended to transport the FA adequacy standard into SNA when section 159 was amended in 1997 (*see Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 157 [1987]). Hence, the failure to include an adequacy requirement in section 159 or a direct statutory reference to section 350 indicates that the Legislature did not impose that special protection on the SNA program, which is the conclusion reached in cases decided after the enactment of the 1997 amendments (*see McVay v Wing*, 303 AD2d 727 [2d Dept 2003], *lv dismissed* 100 NY2d 577 [2003]; *Shubrick v Wing*, 303 AD2d 744 [2d Dept 2003], *lv dismissed* 100 NY2d 577 [2003]; *Hedgepeth v Wing*, 29 AD3d 632 [2d Dept 2006]; *Brownley v Doar*, 44 AD3d 313 [1st Dept 2007]).

Policy considerations also support the Commissioner's determination that the section 350 adequacy standard is not a component of SNA. As previously noted, one of the primary changes effected by the 1996 federal amendments that eliminated the AFDC program and created the TANF program was the 60-month restriction on the receipt of federal welfare assistance. The objective of this limitation was to provide a basic standard of living for a finite time period to provide an incentive to individuals to obtain an education or job training that would allow them to become gainfully employed and eliminate or reduce their reliance on government assistance (*see generally* Statement by President William J. Clinton Upon Signing HR 3734, 32 Wkly Compilation Presidential Docs 1487 [Aug. 26, 1996], reprinted in 1996 US Code Cong & Admin News, at 2891). If plaintiffs here were to prevail, SNA payments would be subjected to an adequacy standard without any temporal or monetary ceiling, contrary to the federal purposes that TANF was intended to promote (*see* Notice of Adoption of Revised 18 NYCRR parts 352 & 381, eff Nov. 1, 2003, Revised Regulatory Impact Statement, at 8).

We are also mindful that New York decided that it is in the State's best interest to support its needy residents after federal public assistance benefits are discontinued and therefore voluntarily undertook to supplement the TANF and FA programs with Safety Net Assistance. In order to provide SNA support to the largest number of indigent individuals for the longest period of time, the Legislature entrusted the Commissioner of OTDA

with the duty to promulgate schedules of SNA grants based on the funding resources available to the agency, together with other relevant considerations. In reaching these determinations, it was the burden of the legislative and executive branches of government to weigh "the intractable economic, social and even philosophical problems presented by public welfare assistance programs" (*Matter of Barie v Lavine*, 40 NY2d 565, 569 [1976]). We therefore hold that the adequacy standard set forth in Social Services Law § 350 is not a component of the SNA program.

## IV

Plaintiffs alternatively maintain that article XVII of the State Constitution mandates that their SNA allowances be increased consistent with an adequacy requirement. This constitutional provision specifies that the "aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine" (NY Const, art XVII, § 1). Article XVII "was intended to serve two functions: First, it was felt to be necessary to sustain from constitutional attack the social welfare programs . . . created by the State . . . and, second, it was intended as an expression of the existence of a positive duty upon the State to aid the needy" (*Tucker v Toia*, 43 NY2d 1, 7 [1977]).

Article XVII, however, was not intended to "mandate that public assistance must be granted on an individual basis in every instance" or "command[ ] that, in carrying out the constitutional duty to provide aid, care and support of the needy, the State must always meet in full measure all the legitimate needs of each recipient" (*Matter of Bernstein v Toia*, 43 NY2d 437, 448-449 [1977]). Thus, there is no right to a constitutionally prescribed minimum shelter allowance since it is the prerogative of the Legislature to "determine who is 'needy' and allocate the public dollar accordingly" (*Matter of Aliessa v Novello*, 96 NY2d 418, 428 [2001]). We have explained that if

> "the over-all consequence of the method of distribution of aid to the needy adopted initially by the Legislature, and subsequently by the department charged with executing the social services program, is reasonably expected to be in furtherance of the optimum utilization of public assistance funds, there has been no violation of the constitutional com-

mand" unless a group of needy persons has been impermissibly excluded from eligibility for benefits (*Matter of Bernstein v Toia*, 43 NY2d at 449).

No such transgression has occurred here because plaintiffs have not demonstrated that the Legislature acted unreasonably in designing the SNA program or that the State has wrongfully excluded a class of needy individuals from the program (*compare Matter of Lee v Smith*, 43 NY2d 453 [1977]). Plaintiffs therefore have not met their burden of establishing that the SNA shelter allowances violate article XVII of the State Constitution.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, without costs.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order, insofar as appealed from, affirmed, without costs.